2022 IL App (2d) 210162
No. 2-21-0162
Opinion filed March 28, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2047 |
| JUSTIN D. DEVINE, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Schostok and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Justin D. Devine, appeals from his conviction, following a bench trial, of nonconsensual dissemination of sexual images, a Class 4 felony (720 ILCS 5/11-23.5(b), (f) (West 2018)). Defendant argues that the State failed to prove beyond a reasonable doubt (1) that he "disseminate[d]" the sexual images (*id.* § 11-23.5(b)(1)) and (2) that the person in the images was "identifiable" (*id.* § 11-23.5(b)(1)(B)). We agree. However, we find that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of disorderly conduct (*id.* § 26-1(a)(1)), a lesser included offense. Accordingly, using our authority under Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967), we reduce defendant's conviction of nonconsensual

dissemination of sexual images to a conviction of disorderly conduct, and we remand for resentencing.

¶ 2                                     I. BACKGROUND

¶ 3     On October 16, 2018, defendant was indicted on one count of nonconsensual dissemination of sexual images. The indictment charged that defendant

"intentionally disseminated 5 images of a female vagina, of another person, being J.S., who is at least 18 years of age and identifiable from information displayed in connection with the image, and whose intimate parts were exposed in whole in the image, and defendant knew that J.S. did not consent to the dissemination."

¶ 4     The following relevant facts were established at defendant's bench trial and are not in dispute. On September 19, 2018, defendant, who was 23 years old, worked at a Verizon store in Huntley. On that day, J.S., who was 32 years old, went to the Verizon store to transfer her cellular service from Sprint to Verizon, and defendant assisted her. Defendant asked J.S. if he could see her cell phone to check certain settings, and J.S. handed her phone to him. J.S. could see defendant's fingers were moving across the screen, but she could not see the screen. Defendant had J.S.'s cell phone in his possession "for less than two minutes."

¶ 5     When defendant handed the cell phone back to J.S., J.S. saw that a text message had been sent from her cell phone to a phone number that she did not recognize. Attached to the text message were five photographs J.S. had taken of her "private parts" one or two evenings earlier. The photographs depicted a woman's vagina and were stored in J.S.'s cell phone's "recent photos section." When J.S. opened the text and saw what it was, she "freaked out." She testified:

"I asked [defendant] for a Post-It Note very quickly where I wrote down the phone number that it was sending to. The little green bar that shows that the text message is in process of

sending was still going, so at that point, after I wrote the phone number down, I deleted the text messages hopefully stopping them from completing."

When asked why she panicked, she stated: "Because the image, the images of the text message that were sending were very personal." After she tried to stop the message from sending, she "went into [her] phone and deleted all of the photos." She stated: "I had absolutely no idea at that time what was going on and I just had to get them off of my phone because they were sending to a number I didn't know." The store manager noticed that J.S. "was panicked about something" and asked her what was wrong. When she told him that her phone was sending messages to an unfamiliar number, he told that "that's been happening a lot lately." Defendant added, "[Y]eah, that happens sometimes, there's a glitch, or something."

¶ 6      When J.S. got home that evening, she told her dad and her stepmom what had happened at the Verizon store. They typed the phone number into "Google," located defendant's Facebook page, and determined that the phone number belonged to defendant—the person who had helped her at the store. They immediately called the police and then met with them over several days.

¶ 7      J.S. identified People's exhibit Nos. 3 through 7 as copies of the images on her cell phone. She identified the images as photographs that she had taken of her vaginal area. Fingernails can also be seen in some of the images. When asked how she could identify herself from the images, J.S. testified: "One, because I took the pictures, and I know what I look like down there. And number two, because the fingernail polish that I had on, I recognize my fingers, my hands, my nail polish." J.S. testified that she was wearing that nail polish when she went to the Verizon store.

¶ 8      The trial court found defendant guilty of nonconsensual dissemination of sexual images. The court found that defendant obtained the images when he "access[ed] the photo roll" and that

"he disseminated them by sending them to himself." According to the court, defendant "ma[de] [the images] more widely known." The court stated:

> "For me to construe the statute any other way would condone or ignore what the defendant did in this case and I think the statute is written more broadly to encompass revenge porn, but I think it fits the circumstances in this case as well. I believe this defendant violated the statute by taking these pictures. He knew he was taking them from her phone. He knew when he sent them to himself that he was going to have them. And whether he lost his nerve afterwards or not, I don't know if that is true or not."

Concerning identification, the court stated: "I did look at the photographs and there is—it could be any female and there is no way to identify the person with red nails or anything from those." However, the court went on to state that J.S. was identifiable to defendant, because "[s]he was sitting in front of him. She gave him her phone. The pictures were on her photo roll. And she had her red nails that day and they were the red nails in the photograph, so he knew who it was. The defendant knew who it was."

¶ 9 Defendant filed a motion for entry of an acquittal or for a new trial, which the trial court denied. A sentencing hearing took place on March 24, 2021. Defendant's presentence investigation report (PSI) included a letter from defendant to the court. In it, he took full responsibility for his actions. He stated that "[w]ithin seconds of the wrong doing [*sic*] I had realized how horrible my actions were" and, further, that he "can't express how much [he'd] like to apologize to [J.S.]" In the section addressing the defendant's "criminal attitudes," he stated "that he [did] not disagree that he was wrong and that he should face consequences." The court sentenced defendant to 18 months' probation and 180 days' jail. The court stayed the jail sentence pending compliance with probation.

¶ 10    Defendant timely appealed.

¶ 11                                II. ANALYSIS

¶ 12    Although neither party requested oral argument, we scheduled oral argument on our own motion, directing the parties to be prepared to argue whether defendant's conduct more accurately fell under the provisions of the disorderly conduct statute and whether it would be appropriate for this court to reduce the degree of the offense. At the outset of oral argument, defense counsel conceded that we had the authority to reduce defendant's conviction and that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of disorderly conduct. The State agreed. (Nevertheless, the State did not concede that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt of nonconsensual dissemination of sexual images.)

¶ 13                    A. Nonconsensual Dissemination of Sexual Images

¶ 14    Defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of nonconsensual dissemination of sexual images. We agree.

¶ 15    Under section 11-23.5(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-23.5(b) (West 2018)):

> "(b) A person commits non-consensual dissemination of sexual images when he or she:
>
>> (1) intentionally disseminates an image of another person:
>>
>>> (A) who is at least 18 years of age; and
>>>
>>> (B) who is identifiable from the image itself or information displayed in connection with the image; and
>>>
>>> (C) who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part; and

(2) obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

(3) knows or should have known that the person in the image has not consented to the dissemination."

¶ 16    Defendant argues that the State failed to prove beyond a reasonable doubt that (1) he "disseminate[d]" the sexual images (*id.* § 11-23.5(b)(1)) because there was no evidence that he sent the images to another person or otherwise distributed them and (2) J.S. was "identifiable from the image itself or information displayed in connection with the image" because there was nothing about the images that would allow anyone to identify her (*id.* § 11-23.5(b)(1)(B)).

¶ 17    Defendant's argument presents both an issue of statutory construction, specifically the meaning of "dissemination," and a challenge to the sufficiency of the evidence. We review *de novo* questions of statutory construction. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). The court's primary objective in construing a statute is to ascertain and give effect to the legislature's intent. *People v. Austin*, 2019 IL 123910, ¶ 15. The best indication of the legislature's intent is the statute's language. *Id.* "In the absence of a statutory definition, courts presume that the words used in a statute have their ordinary and popularly understood meanings." *Id.* ¶ 115. "When reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Bishop*, 218 Ill. 2d 232, 249 (2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 18    We first address the element of dissemination. Defendant argues that, to prove dissemination, the State was required to prove that defendant either sent the images to another

person or otherwise distributed them. On the other hand, the State maintains that defendant disseminated the images when he distributed them to himself.

¶ 19    The seminal (and only) case addressing section 11-23.5(b) of the Code, and the meaning of "disseminate," is *Austin*. *Austin*, 2019 IL 123910, ¶¶ 114-15. In *Austin*, the defendant shared an iCloud account with her fiancé Matthew. *Id.* ¶ 3. As a result, when Matthew received text messages, they also appeared on the defendant's iPad. *Id.* The victim, a neighbor of Matthew, sent naked pictures of herself to him. *Id.* ¶ 4. Although the victim knew that the defendant could, at one time, see Matthew's text messages, she thought that the shared account was deactivated when she sent the pictures, which were solely intended for Matthew. *Id.* ¶ 7. When the defendant and Matthew broke up, the defendant wrote a letter to Matthew's cousin detailing her version of the events that precipitated the breakup, attaching four naked pictures of the victim to the letter. *Id.* ¶¶ 5, 6. When Matthew learned about the letter, he notified the police. *Id.* ¶ 7. The defendant was charged with violating section 11-23.5(b) of the Code. *Id.* ¶ 8. The defendant moved to dismiss the charge, asserting, among other things, that the statute was facially unconstitutional because it was a content-based restriction of speech that was not narrowly tailored to serve a compelling government interest. *Id.* The trial court agreed. *Id.* ¶ 9. The State appealed to the supreme court. *Id.* ¶ 10.

¶ 20    On appeal, one of the defendant's arguments was that section 11-23.5(b) was unconstitutionally vague because the term "disseminate" was not defined in the statute, in that it did not expressly state to whom, when, where, or how to accomplish dissemination. *Id.* ¶ 114. The court rejected this contention, stating:

> "In the absence of a statutory definition, courts presume that the words used in a
> statute have their ordinary and popularly understood meanings. [Citation.] The term

'disseminate' is defined as 'to foster general knowledge of.' [Citation.] In addition, its synonyms include 'BROADCAST,' 'PUBLICIZE,' and 'SPREAD.' [Citation.] The same dictionary defines 'spread' as 'to make more widely known.' [Citation.] In this case, defendant sent a letter to at least one other person that included the private sexual images of the victim without her consent. That conduct unquestionably 'foster[ed] general knowledge of' the victim's image and made it 'more widely known.' Therefore, defendant's conduct clearly fell within the statutory proscription, and she cannot claim that it was vague for lack of notice as to her circumstances." *Id.* ¶ 115.

¶ 21 Given the statute's plain language, as construed by our supreme court in *Austin*, defendant did not disseminate the images when he texted them to his own cell phone. To be sure, as the trial court found, defendant obtained the images when J.S. handed him her phone, and he accessed the photo roll. We note that, for purposes of the statute, it does not matter whether defendant had J.S.'s consent to obtain the images. All that is required is that he "obtain[ed] the image under circumstances in which a reasonable person would know or understand that the image was to remain private" (720 ILCS 5/11-23.5(b)(2) (West 2018)). The State must also prove that the defendant "kn[ew] or should have known that the person in the image has not consented to the dissemination." *Id.* § 11-23.5(b)(3). Here, there is no dispute that J.S. did not consent to defendant's distribution of the images, whether to himself or another. Rather, the issue is whether defendant, in texting the images to himself, indeed "disseminated" the images, that is, whether he " 'foster[ed] general knowledge of' " the images or made them " 'more widely known.' " *Austin*, 2019 IL 123910, ¶ 115 (quoting Webster's Third New International Dictionary 656, 2208 (1993)). He did not.

¶ 22    Unlike in *Austin*, where the defendant sent the images "to at least one other person" (*id.*), defendant's act here of sending the images to himself—images of which he already had knowledge—did not foster general knowledge of the images or make them more widely known, because he did not send them to anyone else. Nor did he " 'BROADCAST' " or " 'PUBLICIZE' " them. *Id.* (quoting Websters Third New International Dictionary 656 (1993)). The trial court stated that "defendant violated the statute by taking these pictures. He knew he was taking them from [J.S.'s] phone. He knew when he sent them to himself that he was going to have them." The court's focus seemed to be on defendant's "taking" of the images. While we certainly do not condone defendant's actions, his "taking" of the images is not an offense under the statute.

¶ 23    The State "rejects defendant's position that, to be found guilty, the image had to be distributed to 'another person.' " The State argues that images can be disseminated without the involvement of another person; for instance, the images can be posted on a website, blog, or social media account. We do not dispute that the statute could be violated in such a manner. Indeed, as noted in *Austin*: " 'Dedicated "revenge porn" sites and other forums openly solicit private intimate images and expose them to millions of viewers, while allowing the posters themselves to hide in the shadows.' " *Id.* ¶ 19. But, even though a "poster" is not directly sharing the images with another person in that situation, the poster is nevertheless indirectly "expos[ing] [the images] to millions of viewers" (*id.*) and thereby making them " 'more widely known.' " *Id.* ¶ 115 (quoting Webster's Third New International Dictionary 2208 (1993)). Here, defendant did not expose the images to anyone, indirectly or directly.

¶ 24    To the extent there is any ambiguity in the meaning of the term "disseminate"—more specifically, whether dissemination required that defendant distribute the images to another person—we may turn to other aids of statutory construction, such as the doctrine of

*in pari materia*, to ascertain the meaning of a provision. *People v. Taylor*, 221 Ill. 2d 157, 163 (2006). Under the doctrine of *in pari materia*, two statutes dealing with the same subject will be considered relative to one another to give them harmonious effect. *Id.* at 161 n.1.

¶ 25    As defendant points out, after the legislature passed section 11-23.5(b) of the Code, it passed a civil statute, entitled "Civil Remedies for Nonconsensual Dissemination of Private Sexual Images Act" (Civil Remedies Act) (Pub. Act 101-556 (eff. Jan. 1, 2020) (adding 740 ILCS 190/1 *et seq.*))), which provides, in relevant part, as follows:

> "(a) Except as otherwise provided in Section 15, if a depicted individual is identifiable to a reasonable person and suffers harm from the intentional dissemination or threatened dissemination by a person over the age of 18 of a private sexual image without the depicted individual's consent, the depicted individual has a cause of action against the person if the person knew:
>
>> (1) the depicted individual did not consent to the dissemination;
>>
>> (2) the image was a private sexual image; and
>>
>> (3) the depicted individual was identifiable.
>
> (b) The following conduct by a depicted individual does not establish by itself that the individual consented to the nonconsensual dissemination of a private sexual image that is the subject of an action under this Act or that the individual lacked a reasonable expectation of privacy:
>
>> (1) consent to creation of the image; or
>>
>> (2) previous consensual disclosure of the image." 740 ILCS 190/10(a), (b) (West 2020).

Unlike section 11-23.5(b) of the Code, which does not define "disseminate," the Civil Remedies Act expressly provides: " 'Dissemination' or 'disseminate' means publication or *distribution to another person* with intent to disclose." (Emphasis added.) 740 ILCS 190/5(4) (West 2020). This definition clarifies that dissemination requires either "publication" of the images—for instance, by posting on social media—or "distribution to another person." *Id.* Defendant did neither.

¶ 26 The State's brief does not address the Civil Remedies Act. Instead, the State simply asserts that " 'another person' includes the person(s) depicted within the distributed image(s), and not 'another person' other than defendant (the disseminator)." Thus, according to the State, when defendant texted the images to himself, he disseminated J.S.'s images to "another person" other than J.S. The State provides no support for this interpretation. In any event, the language of the Civil Remedies Act refutes it. The Civil Remedies Act provides for a cause of action for harm suffered by the "dissemination by *a person* over the age of 18" (emphasis added) (*id.*§ 10(a)) and defines dissemination as "publication or distribution to *another* person" (emphasis added) (*id.* § 5(4)). Thus, the disseminator, "a person," must publish or distribute to "another person" other than the disseminator.

¶ 27 The State also purports to support its position by citing two out-of-state cases—*People v. Iniguez*, 202 Cal. Rptr. 3d 237 (App. Dep't Super. Ct. 2016), and *Morehead v. Commonwealth*, 784 S.E.2d 301 (Va. Ct. App. 2016)—contending that they are "[i]nstructive." Unfortunately, the State does little more than briefly summarize these cases with no explanation of how they inform our decision here. In any event, we do not find either case persuasive.

¶ 28 The State relies on *Iniguez* for the following statement made by the California court: "Completely absent from the legislative history is any indication that the statute should be limited to situations where a person delivered or transferred an image to another specific person." *Iniguez*,

202 Cal. Rptr. 3d at 245. However, when considered in context, the statement provides no support for the State's position that, here, defendant need not have disseminated the images to another person to be found guilty. In *Iniguez*, the defendant was charged with " 'distribut[ing]' " a private image, based on his act of posting a topless picture of the victim on her employer's Facebook page. *Id.* at 240-42 (quoting Cal. Penal Code § 647(j)(4)(A) (West 2014)). The defendant argued that the court should (1) adopt the dictionary definition of "distributes," defining it to mean " '[t]o deliver,' " or (2) use the meaning contained in the federal and state statutes barring distribution of child pornography—the federal statute requiring transfer of the pornography to another person and the state statutes requiring transfer of possession. *Id.* at 245 (quoting Black's Law Dictionary 543 (9th ed. 2009)). According to the defendant, because "posting an image on a social media site such as Facebook does not effectuate delivery of the image or transfer to a specific person," he could not be found guilty of distributing a private image. *Id.* The reviewing court disagreed. The court found no indication in the statutory language that the term " 'distribute[s]' was intended to have a technical legal meaning, or to mean anything other than its commonly used and known definition of 'to give or deliver (something) to people.' " *Id.* (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/distribute (last visited Mar. 4, 2016) [https://perma.cc/3KAS-J3VA]). The court further found that, to the extent the term was ambiguous, legislative history was "replete with indications that posting images on public Web sites was *precisely* one of the evils the statute sought to remedy." (Emphasis in original.) *Id.* The court concluded: "Completely absent from the legislative history is any indication that the statute should be limited to situations where a person delivered or transferred an image to another specific person." *Id.* Indeed, *Iniguez* states that the image need not be transferred to another specific person. However, this statement was in the context of determining whether a posting on Facebook, which

is not a transfer to a specific person, was otherwise sufficient to establish that the defendant distributed the image. The analysis in *Iniguez* assumed that distribution under the California statute entailed, at a minimum, that the defendant shared the image with a third party; the question was whether posting to a website was sufficient. Here, by contrast, the very issue is whether (under Illinois law) dissemination requires sharing with a third party.

¶ 29      In *Morehead*, the defendant posted sexual images of his wife, from whom he was separated, on a website called "myex.com" and posted links to the images on his wife's employer's Facebook page. *Morehead*, 784 S.E.2d at 302. The defendant e-mailed and texted his wife, letting her know what he had done. *Id.* Two of the e-mails included screenshots of the images such that she did not have to use the link to see them. *Id.* The defendant was charged under a Virginia statute and found guilty of " 'disseminat[ing]' " the images. *Id.* at 303 (quoting Va. Code Ann. § 18.2-386.2(A) (West 2014)). The sole issue on appeal was whether venue was proper in James City County, where the wife received the e-mails and viewed the website. The statute under which the defendant was charged contained a separate venue provision, which provided that venue was proper where the criminal act occurred " 'or' where the images were 'produced, reproduced, found, stored, received, or possessed in violation of the statute.' " *Id.* (quoting Va. Code Ann. § 18.2-386.2(B) (West 2014)). The trial court found that, because the wife received the e-mails while in James City County, venue in that county was proper. The defendant argued that "emails to one person, specifically the subject of the images, do not constitute dissemination in violation of the statute because it is not a widespread communication." *Id.* The court stated that the defendant's "narrow argument *** belies the evidence produced at trial. The malicious dissemination in violation of the statute occurred when [the defendant] posted the images on the website for others to see; thus, completing the crime." *Id.* The court went on to reject the defendant's argument that, based on the

use of the word " received' " in the venue provision of the statute, the State was required to prove receipt of the images as an element of the offense. *Id.* at 303-04. The court stated that "[the venue provision] merely directs where to prosecute the offense, and it does not create additional crimes. Thus, receiving the images is not a crime; what is a violation of the statute is the crime of the unauthorized, malicious, dissemination of the images." *Id.* at 304.

¶ 30    As noted, the State does not explain why it believes *Morehead* is "instructive." We presume that the State relies on *Morehead* to establish that defendant's text containing the images did not need to be received by another person to constitute dissemination. *Morehead*, however, assumed that Virginia law required that the defendant shared the images with a third party. We do not make that assumption for Illinois law; rather, the very issue here is whether defendant's text needed to be sent to another person.

¶ 31    Based on the foregoing, we hold that the evidence was insufficient to establish that defendant disseminated the sexual images.

¶ 32    We next consider defendant's argument that the evidence was insufficient to prove beyond a reasonable doubt that J.S. was "identifiable." 720 ILCS 5/11-23.5(b)(1)(B) (West 2018).

¶ 33    The trial court found that J.S. was identifiable to defendant because "[s]he was sitting in front of him. She gave him her phone. The pictures were on her photo roll. And she had her red nails that day and they were the red nails in the photograph, so he knew who it was. The defendant knew who it was." However, that is not what the statute requires. The statute requires that the person in the image be "identifiable from the image itself or information displayed in connection with the image." *Id.*

¶ 34    Here, J.S. was not identifiable from the image itself. The trial court specifically noted as much stating: "it could be any female and there is no way to identify the person with red nails or

anything from those." That determination should have ended the analysis. However, the court erroneously concluded that J.S. was identifiable because defendant knew it was her. In making this determination, the court relied on the fact that J.S. was standing in front of defendant when she handed him her cell phone, that the images were on J.S.'s cell phone, and that J.S. was wearing nail polish similar to that seen in the images. This reasoning goes beyond the language of the statute. While these additional facts may have suggested to defendant that J.S. was the person depicted in the images, the images themselves were anonymous. As the trial court noted, "it could be any female." Indeed, simply because the images were on J.S.'s cell phone does not mean that the images depicted J.S. Thus, the evidence was insufficient to prove beyond a reasonable doubt that J.S. was "identifiable from the image itself." *Id.*

¶ 35   We reject the State's argument (raised for the first time on appeal) that J.S. was identifiable based on "information displayed in connection with the image," specifically (1) "her personal phone number *** connected to the photos with the outgoing text message" and (2) the "metadata embedded within [the] photos." According to the State, a Google search of J.S.'s phone number would reveal her name, age, relatives, current and past addresses, and e-mail address. Metadata would reveal "coordinates of where the picture was taken, along with the date and camera settings." However, even if a Google search of the phone number revealed that the images were connected to J.S.'s cell phone or metadata revealed where the image was taken, as already noted, this would not prove beyond a reasonable doubt that the person in the image is identifiable as J.S. Given that "the image does not contain sufficient information to identify the person depicted," the statute does not apply. See *Austin*, 2019 IL 123910, ¶ 80.

¶ 36   Accordingly, we hold that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt of nonconsensual dissemination of sexual images.

¶ 37                    B. Conviction of the Lesser Included Offense

¶ 38     Rule 615(b)(3) empowers this court to "reduce the degree of the offense of which the appellant was convicted." Ill. S. Ct. R. 615(b)(3) (eff. Jan. 1, 1967). Our authority under this rule is "broad" and applies "even when the lesser offense is not charged and the State did not request an instruction on the lesser offense at trial." *People v. Kennebrew*, 2013 IL 113998, ¶ 25. In this case, given the unique facts and the parties' concession that defendant is guilty of the lesser-included offense, we exercise our authority under Rule 615(b)(3). See *People v. Guerrero*, 2018 IL App (2d) 160920, ¶ 71.

¶ 39     Section 2-9(a) of the Code (720 ILCS 5/2-9(a) (West 2018)) defines a lesser included offense as one that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." Imposition of an uncharged lesser included offense is proper if "the defendant had sufficient notice of the uncharged offense." *Kennebrew*, 2013 IL 113998, ¶ 53. " '[T]he lesser offense need not be a necessary part of the greater offense, but the facts alleged in the charging instrument must contain a broad foundation or main outline of the lesser offense.' " *People v. Figuero*, 2020 IL App (2d) 160650, ¶ 78 (quoting *Kennebrew*, 2013 IL 113998, ¶ 30). " 'The indictment need not explicitly state all of the elements of the lesser offense as long as any missing element can be reasonably inferred from the indictment allegations.' " *Id.* (quoting *Kennebrew*, 2013 IL 113998, ¶ 30).

¶ 40     The indictment charged nonconsensual dissemination of sexual images (720 ILCS 5/11-23.5(b) (West 2018)) "in that defendant intentionally disseminated 5 images of a female vagina, of another person, being J.S., who is at least 18 years of age and identifiable from information displayed in connection with the image, and whose intimate parts were exposed in whole in the

image, and defendant knew that J.S. did not consent to the dissemination." Under section 26-1(a)(1) of the Code, "A person commits disorderly conduct when he or she knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace[.]" 720 ILCS 5/26-1(a)(1) (West 2018).

¶ 41　Here, the act of intentional dissemination as alleged in the indictment was sufficient to establish the element of an "act" done "an unreasonable manner" for purposes of disorderly conduct. *Id.* The remaining elements—alarm or disturb another and to provoke a breach of the peace—have also been established by the evidence. See *People v. Kolton*, 219 Ill. 2d 353 (2006) (holding that, although the indictment alleged predatory criminal sexual assault of a child based on the defendant's act of placing his finger into the victim's vagina, it could be reasonably inferred that the defendant acted for sexual gratification or arousal, as required for the uncharged offense of aggravated criminal sexual abuse). Based on the foregoing, and in light of the parties' concessions, we hold that defendant had sufficient notice of the uncharged offense of disorderly conduct.

¶ 42　We next address the sufficiency of the evidence as to that offense. We find instructive *People v. Pence*, 2018 IL App (2d) 151102, and *People v. Singer*, 2021 IL App (2d) 200314.

¶ 43　In *Pence*, we considered whether the defendant was proved guilty beyond a reasonable doubt of disorderly conduct, based on his act of sending a Facebook message to 16-year-old D.K., saying " 'Hey. Long time no talk. How have you been?' " *Pence*, 2018 IL App (2d) 151102, ¶ 3. There was a history between D.K. and the defendant, which involved inappropriate sexual activity between the then-19-year-old defendant and the then-12-year-old D.K., and the defendant was ultimately convicted of traveling to meet a minor and grooming. *Id.* ¶¶ 4, 18. When D.K. received the Facebook message while at school, she was " 'scared' " and immediately contacted her mom.

*Id.* ¶ 5. D.K. and her mom met with police and requested extra police presence at their home. *Id.* ¶ 9. The defendant argued that his " 'innocuous greeting' " could not constitute disorderly conduct. *Id.* ¶ 18. In considering the sufficiency of the evidence, we noted:

"The purpose of the disorderly-conduct statute is to protect against ' "an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." ' [Citation.] The types of conduct included within the scope of the offense of disorderly conduct ' "almost defy definition." ' [Citation.] 'As a highly fact-specific inquiry, it "embraces a wide variety of conduct serving to destroy or menace the public order and tranquility." ' [Citation.] '[C]ulpability *** revolves not only around the type of conduct, but is equally dependent upon the surrounding circumstances.' [Citation.] 'Generally, to breach the peace, a defendant's conduct must threaten another or have an effect on the surrounding crowd.' [Citation.] 'However, a breach of the peace can occur without overt threats or profane and abusive language.' [Citation.] In addition, it 'need not occur in public.' " *Id.* ¶ 17.

We held that, given the context, "a rational trier of fact could have found that [the] defendant's attempt to reconnect with his victim was unreasonable and threatening to D.K. and [her mom]. Without a doubt, [the] defendant's conduct invaded the right of D.K. and [her mom] to not be mentally harassed." *Id.* ¶ 18.

¶ 44    In *Singer*, the defendant, a youth pastor, sent sexually inappropriate text messages to J.S., a minor. *Singer*, 2021 IL App (2d) 200314, ¶¶ 17-18. When J.S.'s father, D.S., learned of the messages, he contacted D.S. to discuss the texts with him but took no further action. *Id.* ¶ 23. When D.S. later learned that the defendant had been fired from the church, D.S. met with the pastor and disclosed the text messages to him. *Id.* ¶ 24. The defendant argued the State failed to prove that

his conduct provoked a breach of the peace because "he did not threaten, molest, or harass anyone and *** his conduct did not menace public order or tranquility." *Id.* ¶ 51. We disagreed. Relying on *Pence*, we noted that a breach of the peace can occur without overt threats and that it need not occur in public. *Id.* We emphasized that "[c]ulpability is equally dependent upon the type of conduct and the surrounding circumstances." *Id.* We noted that, in *People v. Albert*, 243 Ill. App. 3d 23, 27 (1993), the defendant was convicted of disorderly conduct based on her act of screaming at 2 a.m., which woke and disturbed one neighbor, and in *People v. Ellis*, 141 Ill. App. 3d 632, 633 (1986), the defendant was convicted of disorderly conduct based on his act of tearing down Christmas decorations outside a store while the two store owners watched and then called the police. We concluded:

> "[The] defendant's texts to J.S. were inappropriately sexual and threatened J.S. because they were grooming in nature. Looking at the surrounding circumstances, defendant was J.S.'s spiritual mentor and was in a position of trust, not only to J.S. but also to his entire family. Those texts caused D.S. to confront defendant verbally and then to involve the larger church community." *Singer*, 2021 IL App (2d) 200314, ¶ 52.

¶ 45    As noted, at oral argument the parties conceded that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt of disorderly conduct. Indeed, defense counsel stated that the elements of disorderly conduct were "absolutely" established. We agree. As in *Pence*, defendant invaded J.S.'s right not to be mentally harassed. J.S. testified that, when defendant handed the phone back to her and she saw the outgoing text, she "freaked out" due to the personal nature of the images attached to the outgoing text. She quickly wrote down the phone number to which the images had been sent and quickly attempted to stop the outgoing text. The store manager noticed that J.S. "was panicked about something" and asked her what was wrong. Defendant

himself admitted that what he did was "horrible." As in *Singer*, defendant's actions impacted others. When J.S. got home that evening, she had to tell her dad and her stepmom what had happened. They investigated the phone number J.S. wrote on the Post-It note and discovered that it belonged to defendant. They immediately called the police and then met with them over several days.

¶ 46      As our supreme court noted in *Kennebrew*, a defendant "has no right to an acquittal when the evidence, while insufficient to establish the greater offense, is sufficient to establish the lesser offense. To do otherwise would be unjust." *Kennebrew*, 2013 IL 113998, ¶ 43. Defendant acknowledged as much when he stated that what he did was "horrible" and "that he should face consequences." Accordingly, given our authority under Rule 615(b)(3), the parties' concessions, the compelling evidence that defendant was guilty of disorderly conduct, and the interests of justice, we reduce defendant's conviction of nonconsensual dissemination of sexual images to a conviction of disorderly conduct. We remand for sentencing on that offense.

¶ 47                                  III. CONCLUSION

¶ 48      For the reasons stated, we reduce defendant's conviction of nonconsensual dissemination of sexual images to a conviction of disorderly conduct. We remand the matter to the circuit court of Kane County for sentencing.

¶ 49      Judgment modified.

¶ 50      Cause remanded with directions.

**No. 2-21-0162**

| | |
|---|---|
| **Cite as:** | *People v. Devine*, 2022 IL App (2d) 210162 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 18-CF-2047; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | John W. Gaffney, of Harvard, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Adam Trejo, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |