**2023 IL 128438**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128438)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
JUSTIN DEVINE, Appellee.

*Opinion filed December 29, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Cunningham, and O'Brien concurred in the judgment and opinion.

Justice Overstreet dissented, with opinion, joined by Justice Holder White.

**OPINION**

¶ 1    Defendant, Justin Devine, was convicted in the circuit court of Kane County of nonconsensual dissemination of private sexual images (720 ILCS 5/11-23.5(b), (f) (West 2018)). The court sentenced him to 18 months' probation and 180 days in jail. Defendant appealed, arguing that the State failed to prove him guilty beyond a

reasonable doubt. The appellate court agreed with defendant and reduced his conviction to disorderly conduct. 2022 IL App (2d) 210162. We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2021)), and we now affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        The State charged defendant with one count of nonconsensual dissemination of private sexual images (720 ILCS 5/11-23.5(b), (f) (West 2018)). The indictment alleged that defendant

>   "intentionally disseminated 5 images of a female vagina, of another person, being J.S., who is at least 18 years of age and identifiable from information displayed in connection with the image, and whose intimate parts were exposed in whole in the image, and defendant knew that J.S. did not consent to the dissemination."

The cause proceeded to a bench trial.

¶ 4        J.S. testified that on September 19, 2018, she went to the Verizon store in Huntley because she wanted to port her number from Sprint to Verizon. She worked mostly with one employee, who the defense stipulated was defendant. Defendant asked for her phone. He explained that he needed to go into the settings to see if the phone was ready for the port. Defendant had her phone for approximately two minutes. J.S. could see him moving his fingers over the phone, but she could not see the phone's screen. He asked for her account number from Sprint. J.S. asked for her phone back so she could look it up.

¶ 5        J.S. went to text her ex-boyfriend for the account number, but when she opened her text messages she saw that there was an outgoing message to a number she did not recognize. She asked defendant for a Post-It note so that she could write down the number that the text was going to. J.S. said that she "kind of freaked out" when she saw that the text message was sending pictures of her private parts that she had taken a night or two previously. She deleted the message and the pictures, hoping that this would stop the pictures from being sent. J.S. said that she had not given defendant permission to go into her photos or to send text messages of them.

¶ 6    The store manager noticed that J.S. appeared panicked about something, and he asked what was going on. She said that her phone was sending messages to a number she did not recognize. The manager said that had been happening a lot lately, and defendant said that it happens sometimes and that there was "a glitch, or something." J.S. identified copies of the five pictures that were sent from her phone. She agreed that the pictures were of her genital area and that in some of them you could see her fingernails. She said that she could identify herself from the pictures. When asked how she could identify herself, she said, "I took the pictures and I know what I look like down there." She also said that she recognized her fingers, hands, and nail polish. She said that she was wearing the same nail polish when she went to the detective's office to identify the pictures.

¶ 7    When J.S. left the Verizon store, she went to her father's house to talk to him and her stepmother about what was going on. They did an Internet search for the phone number that J.S. had written on the Post-It note and found that the number belonged to defendant. They found defendant's Facebook page, and J.S. recognized defendant as the person who had helped her at the Verizon store. J.S. then contacted the Huntley Police Department.

¶ 8    Officer Chris Coss of the Huntley Police Department testified that he was sent to speak to J.S. in regard to a suspicious incident call. Coss spoke to J.S., her father, and her stepmother about an incident that had occurred at the Verizon store earlier that day. J.S. directed him to defendant's Facebook page. Coss then used that information to pull up defendant's driver's license and to compare it to the Facebook page. The pictures matched, and Coss passed the information along to other people associated with the investigation.

¶ 9    Sergeant Charles McGrath of the Huntley Police Department testified that he was assigned to assist in the investigation of an incident that occurred at the Verizon store in Huntley on September 19, 2018. He spoke with J.S. by phone about the incident, and she gave him defendant's name. Defendant agreed to an interview with McGrath and his partner, Detective Chris Pishotta. Defendant told them several different stories about what happened. He originally said that he noticed that J.S.'s phone was sending a message to his phone and that he tried to stop it. He realized that photos were being sent, and he panicked and tried to stop it by removing the SIM cards from both phones. He initially said that he did not intend

- 3 -

to send any pictures from J.S.'s phone. Eventually, defendant admitted that he had gone into the "recent photos" on J.S.'s phone and sent five pictures to his own phone number. He said that he received the photos but immediately deleted them. Defendant consented to a search of his phone.

¶ 10 McGrath took defendant's phone to the Kane County Sheriff's Office, where he gave it to Sergeant Steve Bruening. Bruening plugged the phone into his computer Cellebrite system and was able to download the phone's content onto a Cellebrite report. Bruening was able to isolate the five pictures that McGrath had told him they were looking for. McGrath printed the pictures and took them to J.S. for identification. J.S. identified the pictures. McGrath also took pictures of J.S.'s hands that day. He identified the pictures that he took of J.S.'s hands, which show the same shade of red nail polish that was visible on the pictures taken from defendant's phone.

¶ 11 Sergeant Bruening testified that he is currently in charge of the evidence division at the Kane County Sheriff's Office. Bruening explained that Cellebrite software is a forensic tool used to recover information from cell phones and other digital devices. On September 20, 2018, he performed an extraction on a cell phone that McGrath brought him. Bruening explained that he was asked to look for messages or phone calls from a specific phone number. He found that the phone number in question had sent five images to the phone he was inspecting. He identified the pictures that had been admitted into evidence as the ones he had extracted from the phone. He acknowledged on cross-examination that he did not find any evidence that the images had been sent from the phone he inspected to any other numbers.

¶ 12 The trial court found defendant guilty of nonconsensual dissemination of private sexual images. The court noted that there was no question that most of the elements of the offense were satisfied. J.S. was over 18, her intimate parts were exposed in the pictures, defendant obtained the images under circumstances under which a reasonable person would know that the images were to remain private, and defendant knew that J.S. had not consented to the dissemination. The court determined that there were two questions that needed to be answered: whether J.S. was identifiable from the images and whether defendant disseminated the images when he sent them to himself. The court first found that J.S. was identifiable from

the images. The court did not find it relevant that J.S. could identify herself from the images. But the court found that J.S. was identifiable because defendant could have identified her from the information that he had. The court noted that J.S. handed defendant her phone, that the pictures were on her camera roll, that she had red nails in the pictures, and that she was wearing red nail polish in the store that day. From this, the court deduced that defendant knew who was depicted in the pictures. On the dissemination issue, the court found that defendant disseminated the pictures when he sent them to himself. The court noted that defendant did not have J.S.'s permission to access her pictures. The court found that this court's decision in *People v. Austin*, 2019 IL 123910, did not require broad dissemination but only that the defendant make the images more widely known.

¶ 13 Defendant appealed, and the Appellate Court, Second District, modified defendant's conviction to one of disorderly conduct. 2022 IL App (2d) 210162. The appellate court directed the parties to address at oral argument whether defendant's conduct more accurately fell under the disorderly conduct statute. *Id.* ¶ 12. Defense counsel conceded at oral argument that the appellate court had the authority to reduce defendant's conviction to disorderly conduct. *Id.* Defense counsel further conceded that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of that offense. *Id.* The State agreed but also maintained that the evidence was sufficient to convict defendant of nonconsensual dissemination of private sexual images. *Id.*

¶ 14 The appellate court rejected the State's contention that the evidence was sufficient to convict defendant beyond a reasonable doubt of nonconsensual dissemination of private sexual images. *Id.* ¶ 36. The appellate court first addressed whether defendant disseminated the images when he texted them to himself. *Id.* ¶ 18. The court quoted the definition of the word "disseminate" that this court used in *Austin* (*id.* ¶ 20) and read that case as holding that dissemination occurs where a defendant sends the images " 'to at least one other person.' " (*id.* ¶ 22 (quoting *Austin*, 2019 IL 123910, ¶ 115)). The court held that defendant's act of sending the images to himself was not dissemination because he had not sent them to at least one other person. *Id.* The court found support for this interpretation in the definition of "dissemination" found in the Civil Remedies for Nonconsensual Dissemination of Private Sexual Images Act (Civil Remedies Act) (740 ILCS 190/1 *et seq.* (West 2020)). 2022 IL App (2d) 210162, ¶¶ 25-26. That act defines "dissemination" or

"disseminate" as "publication or distribution to another person with intent to disclose." 740 ILCS 190/5(4) (West 2020).

¶ 15    The appellate court next considered whether the evidence was sufficient to prove beyond a reasonable doubt that J.S. was identifiable from the images. The court noted that the statute requires that the person in the image be " 'identifiable from the image itself or information displayed in connection with the image.' " 2022 IL App (2d) 210162, ¶ 33 (quoting 720 ILCS 5/11-23.5(b)(1)(B) (West 2018)). The court found that not to be the case here. The court agreed with the trial court's comment that the person in the picture " 'could be any female' " and that " 'there is no way to identify the person with red nails or anything from those.' " *Id.* ¶ 34. The court held that this should have ended the trial court's inquiry. *Id.* The court further explained that the fact that the pictures were on J.S.'s cell phone did not mean that she was the person depicted in the images. *Id.* The court also rejected the State's argument that J.S. was identifiable from the metadata embedded in the photos and her phone number that accompanied the images. *Id.* ¶ 35. The court held that this information did nothing more than connect the images to J.S.'s cell phone. *Id.* It would not prove beyond a reasonable doubt that the person in the image was identifiable as J.S. *Id.* Accordingly, the court reduced defendant's conviction to disorderly conduct, which the court held to be a lesser included offense of nonconsensual dissemination of private sexual images. *Id.* ¶¶ 39-48.

¶ 16    We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 17                                    ANALYSIS

¶ 18    The State argues that the appellate court erred in holding that the evidence was insufficient to convict defendant of nonconsensual dissemination of private sexual images. The statute defining the offense provides as follows:

"A person commits non-consensual dissemination of private sexual images when he or she:

(1) intentionally disseminates an image of another person:

(A) who is at least 18 years of age; and

(B) who is identifiable from the image itself or information displayed in connection with the image; and

(C) who is engaged in a sexual act or whose intimate parts are exposed, in whole or in part; and

(2) obtains the image under circumstances in which a reasonable person would know or understand that the image was to remain private; and

(3) knows or should have known that the person in the image has not consented to the dissemination." 720 ILCS 5/11-23.5(b) (West 2018).

The State contends that the court erred both in holding that (1) defendant did not "disseminate" the images, as that term is used in the statute, when he texted images from J.S.'s phone to his own and (2) J.S. was not identifiable from the images or information displayed in connection with them.

¶ 19 Ordinarily, when a defendant challenges the sufficiency of the evidence supporting his conviction, we ask whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Conway*, 2023 IL 127670, ¶ 16. Here, however, the question is whether the undisputed facts are an offense as defined by the statute. Accordingly, our review is *de novo*. See *City of Champaign v. Torres*, 214 Ill. 2d 234, 241 (2005); *People v. Ward*, 215 Ill. 2d 317, 324 (2005); *People v. Smith*, 191 Ill. 2d 408, 411 (2000).

¶ 20                                    I. Dissemination

¶ 21 The State argues that the appellate court erred in determining that defendant did not "disseminate" the images, as that term is used in the statute, because he sent them to himself. In *Austin*, this court noted that the statute defining the offense does not contain a definition of "disseminate." *Austin*, 2019 IL 123910, ¶ 114. This court explained that it would thus presume that the word had its ordinary and popularly understood meaning. *Id.* ¶ 115. This court looked to the dictionary and explained that " 'disseminate' " means to " 'foster general knowledge of' " and that listed synonyms were " 'BROADCAST,' " " 'PUBLICIZE,' " and " 'SPREAD.' " *Id.* (quoting Webster's Third New International Dictionary 656 (1993)). This court

then stated that the defendant's conduct in that case unquestionably fit within the statute's proscription because she "sent a letter to at least one other person that included the private sexual images of the victim without her consent." *Id.* The appellate court seized on this statement and concluded from it that defendant in this case did not disseminate the images because he did not send them to at least one other person. 2022 IL App (2d) 210162, ¶ 22.

¶ 22        *Austin*, however, was addressing a very different factual scenario. In *Austin*, the defendant shared an iCloud account with her fiancé. *Austin*, 2019 IL 123910, ¶ 3. Because of this, all data sent to her fiancé's iPhone went to the shared iCloud account, which the defendant could access from her iPad. *Id.* A neighbor sent nude pictures of herself to the defendant's fiancé, and the defendant saw them on her iPad. *Id.* ¶ 4. When the engagement was canceled, the defendant's fiancé began telling people that the relationship ended because the defendant was crazy and did not cook or do household chores. *Id.* ¶ 5. The defendant then sent a letter to her fiancé's cousin explaining her side of the story. *Id.* ¶ 6. She attached to the letter four of the naked pictures of the neighbor and copies of the text messages that the neighbor had exchanged with the defendant's fiancé. *Id.* In explaining why the defendant's conduct violated the statute, this court made the above quoted comment about sending the images "to at least one other person." *Id.* ¶ 115. The appellate court inferred from this that a person may not be convicted under section 11-23.5(b) if he sends a person's private sexual images to himself. 2022 IL App (2d) 210162, ¶ 22.

¶ 23        We perceive no such categorical bar. Under the specific facts of this case, we hold that defendant disseminated the images when he texted them to himself. If the defendant in *Austin* had sent the pictures from her iPad to another device of hers, that would not have been a dissemination. But that is not what happened here. Defendant had possession of the victim's phone for a limited purpose—helping her transfer her cell service. He then entered the phone's camera roll without her consent and texted her private sexual images to a member of the public whom she did not wish to have them. That the member of the public was himself does not mean that he did not disseminate the images. As we stated in *Austin*, "disseminate" means to "spread," and defendant unquestionably did this when he sent images from the victim's phone to his own. Defendant's act resulted in the spreading of the images more widely than they had previously been spread. Before defendant's act,

only J.S. had possession of the pictures. Defendant then accessed her camera roll and sent the images to himself—an act to which she had clearly not consented. Defendant distributed the pictures from the person who possessed them to another person. Both in this case and in *Austin*, the defendant's conduct was to send the victim's private sexual images to a person whom she did not consent to having them and who did not already possess them.

¶ 24    Under defendant's reading of the statute, if he had improperly entered the victim's camera roll without her consent and texted the images to a coworker or his roommate—indeed to *any* other person—he would be guilty of nonconsensual dissemination of private sexual images. But because he sent the images to himself, he did not violate the statute. But the conduct in both situations is the same. The defendant is improperly accessing someone's photos without her consent and sending them to a member of the public whom she does not want to have them. If accessing someone's private photos on their phone without their consent and sending them to a member of the public who does not already have them is an act of dissemination, then defendant disseminated the pictures. As the State points out, there is no reason to believe that the legislature intended to privilege violations of a victim's privacy if committed in the service of defendant's own prurient interests rather than those of others.

¶ 25    The appellate court also relied on the fact that in *Austin* this court noted that one definition of "spread" is " ' "to make more widely known" ' " and that this court held that the defendant in that case did that when he sent the images to another person. *Id.* ¶ 20 (quoting *Austin*, 2019 Il 123910, ¶ 115, quoting Webster's Third New International Dictionary 2208 (1993)). The court explained that, unlike in *Austin*, defendant here did not make the images more widely known when he texted them from the victim's phone to his own. *Id.* ¶ 22. The court reasoned that, because defendant had knowledge of the images when he sent them, he did not make them more widely known when he sent them to himself. *Id.* In other words, according to the appellate court, once defendant had seen the pictures in J.S.'s camera roll, he could not disseminate them to himself. The problem with this reasoning, as noted by the State, is that the statute prohibits dissemination of images, not knowledge of images. Defendant does not dispute that, if he had texted the images to a coworker, he would have been guilty of the offense. Under the appellate court's reasoning, however, if he had quickly flashed the images to that coworker and asked "do you

want these?" then sending them to the coworker would *not* be dissemination. Such a holding would be illogical and not in keeping with the purpose of the statute. The focus must be on whether a person spreads the images to a person whom the victim did not wish to have them.

¶ 26 Moreover, we agree with the State that exempting defendant's conduct would be contrary to the purposes of the statute. The obvious purpose of the statute is to protect victims from (1) the embarrassment and emotional distress of being wrongfully deprived of control over their private sexual images and (2) the accompanying risk of harassment, discrimination, and possible violence. When defendant improperly accessed J.S.'s private pictures on her phone and sent them to himself without her consent, he deprived her of control over the pictures and caused her emotional distress. J.S. testified that she "freaked out" when she saw that her pictures were being sent to a number that she did not recognize, tried to stop the text from going through, and then immediately contacted the police. And again, this is because defendant's conduct was to cause the images to be sent to a member of the public whom J.S. did not wish to have them.

¶ 27 The appellate court also relied on the language of the Civil Remedies Act, which became effective in 2020, and its accompanying definition of "disseminate." *Id.* ¶ 25. The appellate court argued that the criminal statute and the civil statute should be construed *in para materia*. *Id.* ¶ 24. That statute provides, in relevant part:

"(a) Except as otherwise provided in Section 15, if a depicted individual is identifiable to a reasonable person and suffers harm from the intentional dissemination or threatened dissemination by a person over the age of 18 of a private sexual image without the depicted individual's consent, the depicted individual has a cause of action against the person if the person knew:

(1) the depicted individual did not consent to the dissemination;

(2) the image was a private sexual image; and

(3) the depicted individual was identifiable.

(b) The following conduct by a depicted individual does not establish by itself that the individual consented to the nonconsensual dissemination of a

private sexual image that is the subject of an action under this Act or that the individual lacked a reasonable expectation of privacy:

>    (1) consent to creation of the image; or

>    (2) previous consensual disclosure of the image." 740 ILCS 190/10(a), (b) (West 2020).

The statute provides in its definition section that " 'Dissemination' or 'disseminate' means publication or distribution *to another person* with intent to disclose." (Emphasis added.) *Id.* § 5(4). The appellate court combined the opening sentence of section 10(a) with section 5(4) and concluded that, because the Civil Remedies Act provides a remedy for " 'dissemination by a person over the age of 18' " and defines "dissemination" as " 'publication or distribution to another person,' " the disseminator must publish to a person other than the disseminator. (Emphases omitted.) 2022 IL App (2d) 210162, ¶ 26 (quoting 740 ILCS 190/10(a) (West 2020)). We disagree.

¶ 28        First, the definitions in the Civil Remedies Act apply only to that act. See 740 ILCS 190/5 (West 2020). The legislature could have defined "dissemination" in section 11-23.5(b) but chose not to. Accordingly, we held in *Austin* that we would give the term its plain meaning (*Austin*, 2019 IL 123910, ¶ 115), and we explained above that defendant's conduct fell within that definition. Second, even if we were to apply the definition from the Civil Remedies Act, it would not preclude the conclusion that defendant disseminated the images. We agree with the State that, in this context, defendant was "another person" as that term is used in the Civil Remedies Act. Before defendant's conduct, J.S. was in sole possession of her private sexual images. Defendant then surreptitiously accessed her phone's camera roll and sent the images to a person who did not already possess them—himself— without her consent. We believe that "another person" must be understood to refer to a person *other than the depicted individual.* Indeed, this is how the first part of section 10(a) reads if the word "disseminate" is replaced with its statutory definition:

>    "Except as otherwise provided in Section 15, if a depicted individual is identifiable to a reasonable person and suffers harm from the intentional [publication or distribution to another person] or threatened [publication or

distribution to another person] by a person over the age of 18 of a private sexual image without the depicted individual's consent, the depicted individual has a cause of action against the person ***." 740 ILCS 190/10(a) (West 2020).

See *id.* § 5(4). In other words, the statute provides a remedy for someone who suffers harm from the distribution of his or her private sexual images to another person. In a situation in which the defendant is not in possession of the images before sending them, the defendant qualifies as "another person" under the statute. This reading is consistent with the purpose of the statute.

¶ 29　　By contrast, the appellate court's interpretation is contrary to the purposes of both the civil and criminal statutes. The appellate court's interpretation would exempt from the reach of these statutes the act of someone who inflicts the precise harm the legislature sought to address. The appellate court's interpretation would mean that someone who improperly gains access to another person's private sexual images on that person's phone and sends them to anyone in the world other than himself would be violating these statutes but, if he sends them to himself, he has not violated the statutes. This is inconsistent with the purpose of the statutes because, in this situation, the defendant himself is simply "another person" whom the victim did not consent to having her private sexual images and the harm inflicted is the same.

¶ 30　　In sum, there are certainly instances in which a person's act of sending a person's private sexual images to himself would not be a dissemination for purposes of the statute. As we stated above, this would be the case if a person who already possessed the images sent the images from one of his own devices to another. But it does not follow that it is *impossible* for a person to disseminate images by sending them to himself. Under circumstances like those here, where someone gains unauthorized access to pictures on another person's phone and sends them to himself, he has disseminated the images and caused the precise harm that the legislature sought to address.

¶ 31　　　　　　　　　　　　　　II. Identifiable

¶ 32　　Although we disagree with the appellate court's conclusion that defendant did not disseminate the images when he texted them from J.S.'s phone to his own, we

- 12 -

agree with the appellate court that J.S. was not identifiable from the images. Section 11-23-5(b) does not prohibit the dissemination of all private sexual images, only those from which the person depicted "is identifiable from the image itself or information displayed in connection with the image." 720 ILCS 5/11-23.5(b)(1)(B) (West 2018). "Identifiable" means "capable of being identified." Webster's Third New International Dictionary 1123 (1993). Here, the pictures are five closeup images of female genitalia. In four of them, the first joint of one or more fingers is visible. The fingernails have red polish on them.

¶ 33     J.S. was not identifiable from these images. Indeed, to say that she was would effectively read the "identifiable" element out of the statute and prohibit the dissemination of all private sexual images. It is irrelevant that J.S. testified that she could identify herself from the photos. Again, if that were the question, the "identifiable" element would be rendered largely meaningless. The harm comes in someone else being able to identify the victim. As the appellate court noted, the trial court should have concluded its analysis after determining that the pictures " 'could be any female' " and that there was no way to identify someone from red nails. 2022 IL App (2d) 210162, ¶ 34. The State refers to the nail polish as J.S.'s "distinctive" nail polish, but the pictures simply display red nail polish. We could obviously not say that red nail polish is a distinctive identifier.

¶ 34     We also agree with the appellate court that it was not sufficient that J.S. was wearing red nail polish on the day that she went to the Verizon store or that the images were on her phone:

> "[T]he court relied on the fact that J.S. was standing in front of defendant when she handed him her cell phone, that the images were on J.S.'s cell phone, and that J.S. was wearing nail polish similar to that seen in the images. This reasoning goes beyond the language of the statute. While these additional facts may have suggested to defendant that J.S. was the person depicted in the images, the images themselves were anonymous. As the trial court noted, 'it could be any female.' Indeed, simply because the images were on J.S.'s cell phone does not mean that the images depicted J.S." *Id.*

¶ 35     The statute requires that the person be identifiable from the images themselves or from "information displayed in connection with the image." 720 ILCS 5/11-23.5(b)(1)(B) (West 2018). The State contends that J.S. was identifiable because

- 13 -

the pictures were texted from her phone number and an Internet search of her phone number could reveal who had that number. The State, however, did not introduce any evidence that anyone had performed an Internet search of J.S.'s phone number. Moreover, even if the phone number could be connected to J.S., that would establish nothing more than that the images had been on her phone. It would not establish that the images were identifiable as J.S.[1]

¶ 36                          CONCLUSION

¶ 37        Although we disagree with the appellate court's conclusion that defendant did not disseminate the images when he texted them from J.S.'s phone to his own, we agree with the appellate court's conclusion that J.S. was not identifiable from the images. The appellate court thus correctly concluded that defendant's conviction for nonconsensual dissemination of private sexual images could not stand. Defendant conceded in the appellate court that the evidence was sufficient to convict him of disorderly conduct, and that issue is not before us. We thus express no opinion on the appellate court's determination that disorderly conduct is a lesser included offense of nonconsensual dissemination of private sexual images. We affirm the appellate court's judgment reducing defendant's conviction to disorderly conduct.

¶ 38        Appellate court judgment affirmed.

¶ 39        Circuit court judgment affirmed as modified.

¶ 40        JUSTICE OVERSTREET, dissenting:

¶ 41        I would affirm defendant's conviction for nonconsensual dissemination of private sexual images (720 ILCS 5/11-23.5(b), (f) (West 2018)) and reverse the

---

[1]In the appellate court, the State argued that J.S. was identifiable from metadata embedded within the pictures. See 2022 IL App (2d) 210162, ¶ 35. The State, however, did not introduce any evidence as to what metadata was embedded in the photos. The State does not repeat that argument in this court.

appellate court's judgment. I would hold the evidence sufficient to convict defendant of the charged offense. Thus, I respectfully dissent.

¶ 42    I agree with the majority that the statute criminalizing the nonconsensual dissemination of private sexual images serves the obvious purpose of protecting victims from the embarrassment and emotional distress of being wrongfully deprived of control over their private sexual images and the accompanying risk of harassment, discrimination, and possible violence. *Supra* ¶ 26. I also agree with the majority that "where someone gains unauthorized access to pictures on another person's phone and sends them to himself, he has disseminated the images and caused the precise harm that the legislature sought to address." *Supra* ¶ 30. Thus, I agree with the majority that, under the circumstances presented in this case, defendant disseminated J.S.'s sexual images when he electronically transferred them from J.S.'s phone to his own.

¶ 43    I disagree with the majority's conclusion that J.S. was not identifiable from the images. *Supra* ¶ 32. The statute at issue requires that J.S. be "identifiable from the image itself or information displayed in connection with the image." 720 ILCS 5/11-23.5(b)(1)(B) (West 2018). As noted by the majority, " '[i]dentifiable' means 'capable of being identified.' Webster's Third New International Dictionary 1123 (1993)." *Supra* ¶ 32. In concluding that J.S. was not readily identifiable from the five close-up images of her female genitalia, the majority ignores the plain language of the statute and renders superfluous the language "or information displayed in connection with the image." See 720 ILCS 5/11-23.5(b)(1)(B) (West 2018). Yet each word, clause, and sentence of a statute must be given a reasonable meaning and should not be rendered superfluous. See *In re M.M.*, 2016 IL 119932, ¶ 16. "[I]nformation displayed in connection with the image" includes the red fingernail polish, displayed in the images and on her person the day defendant disseminated her sexual images in her presence, and her mobile phone number from which defendant electronically transferred the images to himself. See generally *United States v. Hiser*, 82 M.J. 60, 65-66 (C.A.A.F. 2022) (with regard to statute requiring victim to be identifiable from the visual image or from information displayed in connection with the visual image, victim considered "identifiable" because victim identified herself and because information displayed in connection with the videos, including husband's username, face, and description as " 'wife,' " identified her).

These facts together sufficiently established the elements of nonconsensual dissemination of private sexual images (720 ILCS 5/11-23.5(b), (f) (West 2018)).

¶ 44    J.S. identified her genitalia and her fingernails depicted in the images. She testified that she could identify herself from the photos, and I disagree with the majority's conclusion that this testimony is wholly irrelevant. *Supra* ¶ 33; see generally *Roberts v. United States*, 216 A.3d 870, 884 (D.C. Ct. App. 2019) (where victim identified herself in sexually explicit images, her name was written on some of the images, and the images were displayed near victim's home and car, a reasonable jury could conclude that the person depicted in the images displayed by defendant was "identified" within the meaning of the unlawful-disclosure statute). Interpreting the statute to require the image to include a characteristic so unique that a person unacquainted with the victim could identify her misconstrues the plain language of the statute and unduly limits it, considering the realities of how this crime is likely to be committed. See generally *People v. Johnson*, 184 Cal. Rptr. 3d 850, 865 (Ct. App. 2015) (as long as someone, including the victim herself, could identify or recognize the victim, the "identifiable person" element is satisfied because restricting "identifiable" to require a record of characteristics so unique that a stranger unacquainted with the victim could recognize or identify her "would be inimical to the legislative purpose of preventing the invasion of privacy caused by 'up-skirt' photography").

¶ 45    Moreover, she was "identifiable" because she had handed defendant her phone, the pictures were located in her camera roll in her cell phone, her red nails were depicted along with her genitalia, and she was wearing red nail polish in the defendant's presence at the store that day. Defendant had been made aware of her cell phone information and electronically transferred the images from her phone to his phone so that her cell phone number also became "information displayed in connection with the image." 720 ILCS 5/11-23.5(b)(1)(B) (West 2018). Accordingly, J.S. was identifiable by both herself and defendant "from the image itself" and from "information displayed in connection with the image." *Id.*

¶ 46    I disagree with the majority's suggestion that J.S. suffers harm only if a complete stranger can identify her in the images. *Supra* ¶ 33. When J.S. identified herself in a sexual image that was disseminated by defendant without her consent and defendant was able to identify J.S. in a sexual image he disseminated without

- 16 -

her consent, she was harmed. J.S. testified that she "freaked out" when she saw that her pictures were being sent to a number that she did not recognize, tried to stop the text from going through, and then immediately contacted the police. See *People v. Austin*, 2019 IL 123910, ¶ 21 (nonconsensual dissemination of private sexual images is wrong because exposing a person's sexual images against her will fundamentally deprives her of the right to privacy).

¶ 47　　　　Here, the circuit court reasonably inferred that defendant was able to identify J.S. from the images, which showed J.S.'s genitalia and the fingernail polish she was wearing in defendant's presence at the store and which were accompanied by information that showed the photos had been sent from J.S.'s mobile phone number while she was in the store and while her phone was in defendant's possession. "The animating purpose of section 11-23.5(b) is to protect living persons from being victimized by harassment, discrimination, embarrassment, and possible violence resulting from the privacy violation occasioned by the nonconsensual dissemination of private sexual images." *Austin*, 2019 IL 123910, ¶ 99. The photographs were accompanied by J.S.'s phone number, from which one could determine her name, address, and other personal identifying information, thereby exposing her to the risk of harassment. I would therefore affirm the defendant's conviction for nonconsensual dissemination of private sexual images (720 ILCS 5/11-23.5(b), (f) (West 2018)). Accordingly, I respectfully dissent from the majority's decision reducing defendant's conviction to disorderly conduct.

¶ 48　　　　JUSTICE HOLDER WHITE joins in this dissent.